UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

April 2, 2014

LETTER TO COUNSEL:

      RE:    *Lisa Harley v. Commissioner, Social Security Administration*;
             Civil No. SAG-13-2004

Dear Counsel:

      On July 11, 2013, the Plaintiff, Lisa Harley, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. ECF No. 1. I have considered the parties' cross-motions for summary judgment. ECF Nos. 17, 19. I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

      Ms. Harley filed her claims for benefits in 2010, alleging her disability onset date was May 27, 2010. (Tr. 68, 77). Her claims were denied initially and on reconsideration. (Tr. 116–21, 131–44). A hearing was held on February 14, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 38–67). Following the hearing, on March 30, 2012, the ALJ determined that Ms. Harley was not disabled within the meaning of the Act. (Tr. 13–32). The Appeals Council denied Ms. Harley's request for review, (Tr. 1–7), so the ALJ's decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Ms. Harley suffered from severe impairments of degenerative disc disease of the cervical spine, osteoarthritis of the bilateral knees, bilateral foot pronation, migraines, and carpal tunnel syndrome. (Tr. 15–17). Despite these impairments, the ALJ determined that, Ms. Harley retained the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she needs a "sit/stand option," allowing her to alternate between a sitting and standing position at least every 30 minutes. She can frequently, but not constantly push, pull, reach (including overhead), handle, and finger with her bilateral upper extremities. She cannot push, pull, or operate foot controls with her bilateral lower extremities. She can occasionally use ramps and climb stairs but can never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop, but can never kneel, crouch or crawl. She must avoid concentrated exposure to extreme cold, heat, wetness, humidity, and vibrations. She must

avoid hazards including moving machinery and unprotected heights.

(Tr. 20). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Harley could perform jobs existing in significant numbers in the national economy, and that she was not therefore disabled. (Tr. 31–32).

Ms. Harley presents three primary arguments on appeal: (1) that the ALJ did not properly assess the opinion of a treating physician, (2) that a hypothetical that the ALJ posed to the VE was an inaccurate reflection of the record, and (3) that the ALJ erred in making an adverse credibility judgment. For the reasons set forth below, I find that all three arguments lack merit.

Ms. Harley first contends that the ALJ did not properly weigh the opinions of her treating physician, Dr. Gopalan. Pl.'s Mot. 8. A treating physician's opinion is given controlling weight when two conditions are met: (1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and (2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 585 (4th Cir.1996); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In this case, the ALJ assigned partial weight to Dr. Gopalan's opinions based on (1) the internal inconsistency of his reports, (2) the fact that Dr. Gopalan provided only "conservative and routine treatment," and (3) the opinions lack "significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled[.]" (Tr. 30).

I find that the ALJ's decision to assign partial weight to Dr. Gopalan's opinions is supported by substantial evidence. Among numerous "Progress Notes" which, as the ALJ noted, are generally illegible, Dr. Gopalan proffered two opinions on Ms. Harley's condition and limitations, dated May, 2010, and June, 2011. (Tr. 17, 26, 30). The ALJ properly utilized Dr. Gopalan's opinions to the extent that the opinions were consistent with the rest of the record. In comparing Dr. Gopalan's opinion from June, 2011 with the ALJ's findings that Ms. Harley could perform sedentary work, the two opinions are generally similar.[1] Ms. Harley contends that the RFC assessment and Dr. Gopalan's opinion only substantially differ as to the amount of time Ms. Harley can use her hands. Pl.'s Mot. 8. The ALJ in her RFC assessment determined that Ms. Harley can "frequently, but not constantly push, pull, reach (including overhead), handle, and finger with her bilateral upper extremities." (Tr. 20). In his May, 2010 opinion, Dr. Gopalan approved Ms. Harley's ability to reach for 2 hours, but then said Ms. Harley could not use her hands for actions like simple grasping, pushing and fine manipulation. (Tr. 340). In his June, 2011 opinion, Dr. Gopalan opined that Ms. Harley cannot reach, can handle for ½ hour to an hour, and has impaired feeling due to neuropathy. (Tr. 490).

The ALJ first cited the internal inconsistency of Dr. Gopalan's opinions as a reason not to give controlling weight to the opinions. In her decision, the ALJ noted inconsistency in Dr. Gopalan's opinions as the doctor opined "the claimant has no restrictions on sitting or standing

---

[1] Dr. Gopalan's June, 2011 opinion matches the RFC assessment in finding that Ms. Harley can sit for eight hours, with a break every hour, stand or walk for two hours, with a break every half hour, and lift and carry 10 pounds frequently and 20 pounds occasionally. *Compare* Tr. 488–89, *with* Tr. 20.

and can lift and carry 20 pounds occasionally and 10 pounds frequently," but the doctor also opined that Ms. Harley "could only work for four hours a day." (Tr. 30).

The ALJ next noted that Dr. Gopalan's opinions have "certain aspects," that are "in fact consistent with the residual functional capacity," and are "supported by evidence and explanation." (Tr. 30). However, the ALJ noted that other aspects of Dr. Gopalan's opinion "[depart] substantially from the rest of the evidence of record." (Tr. 30). Earlier in the decision, the ALJ cited both non-medical and medical evidence that is inconsistent with Dr. Gopalan's opinion as to Ms. Harley's ability to use her hands and arms. For example, as to non-medical evidence considered by the ALJ, while Ms. Harley "was unable to write or sign on a paper" for her initial interview in June, 2010 (Tr. 17), in October, 2010, Ms. Harley had "handwritten many pages in support of the instant application," despite claims of pain in her dominant right hand. Among other hand written pages, the ALJ considered Ms. Harley's handwritten answers to the Pain Questionnaire completed less than nine months after her right carpal tunnel surgery. (Tr. 23, 244–46). The ALJ also considered Ms. Harley's self-reported ability to "prepare complete meals on a daily basis and can clean the house, do laundry, iron, do dishes, and dust." (Tr. 23).

Additionally, the ALJ's examination of the other medical opinions on the record demonstrates that Dr. Gopalan's opinion of Ms. Harley's ability to use her hands is inconsistent with other physicians' opinions on Ms. Harley's condition. The ALJ considered the documented improvements to Ms. Harley's hand use and reaching ability since her 2009 cervical fusion surgery, her 2010 carpel tunnel surgery, and her July, 2010 cortisone injections to the elbow. (Tr. 28). The ALJ also considered the notes from a specialist who examined Ms. Harley. The ALJ noted the improvement to Ms. Harley's hand as documented by Dr. Charles Schnee, a neurologist who performed a right transverse carpal ligament release on Ms. Harley in February, 2010. (Tr. 17). Dr. Schnee examined Ms. Harley numerous times from January, 2010 until September, 2011, and the ALJ cited repeatedly to Dr. Schnee's opinions as to Ms. Harley's improvements. *See* (Tr. 24) (citing Dr. Schnee's note "about a week after the claimant's alleged onset date" that Ms. Harley had a "full range of motion"); (Tr. 24) (in June, 2010, Dr. Schnee noted Ms. Harley's right hand was improving, and "she had better range of motion and less tenderness and induration."); (Tr. 24-25) (in mid-September, 2010, Dr. Schnee noted that Ms. Harley's "right wrist wound had healed very well… she had 5/5 motor laterally including the right grip… there was no apparent guarding of the wrist.. [and he] encouraged her to increase her activities as tolerated and pursue exercise."); (Tr. 26) (in March, 2011, Dr. Schnee noted that Ms. Harley's cervical myelopathy was stable, "her right hand and neck wounds were very well healed. She had 5/5 motor, including the right grip….She did not guard her wrist."); (Tr. 26) (considered examination by Dr. Schnee in September, 2011, when he noted Ms. Harley had "improved use of her right hand," and there was "no evidence of any cervical dysfunction."); (Tr. 28) ("No further surgery has been recommended for her … right wrist problems. In early September, 2011, Dr. Schnee released her from his care.").

The ALJ also considered the opinion of Dr. Jeffrey Landis, a rheumatologist Ms. Harley began seeing in mid-July 2010, who administered cortisone injections to treat the pain in Ms. Harley's left elbow and left knee. The ALJ noted the left elbow pain was resolved by the

cortisone injection. (Tr. 17, 28). Dr. Landis consistently noted that Ms. Harley had a normal range of motion and normal grip strength when examining Ms. Harley's hand and extremities. *See, e.g.*, (Tr. 439, 444, 464). The ALJ determined that the prescribed treatments have been "generally successful in controlling" Ms. Harley's symptoms in her hand and elbow. (Tr. 28). In weighing the medical opinions on the record, it is within the ALJ's discretion to give the opinions of treating specialists more weight. 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927(c)(5) (the ALJ "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The ALJ did not err in giving Dr. Gopalan's opinion less than controlling weight, because his opinions were inconsistent with the other evidence on the record demonstrating an improvement to the use of Ms. Harley's hand and elbow, as indicated by the non-medical evidence and the progress notes from several specialists who examined Ms. Harley.

The ALJ also decided to give partial weight to Dr. Gopalan's opinion based on the fact that Dr. Gopalan "provided only conservative and routine treatment," which is inconsistent with a finding of disability. (Tr. 30). While the ALJ did not elaborate on this finding, a close examination of the record demonstrates a basis for this conclusion. As Ms. Harley's primary care provider, Dr. Gopalan's treatment included prescribing medication and other conservative treatments to manage Ms. Harley's pain, but referring Ms. Harley to specialists for specific complaints. *See, e.g.*, (Tr. 340) (referred to orthopedics and pain management "for evaluation and management"); (Tr. 443) ("cont. meds, F/U with ortho."); (Tr. 401) ("ok to do yoga.. [take] Nexium"); (Tr. 402) ("cont. valium"); (Tr. 436) ("take valium"); (Tr. 506) ("cont. PT [physical therapy]"). Dr. Gopalan also requested various general tests for Ms. Harley, such as a nerve conduction electromyography, blood work, and evaluation of a thyroid nodule. (Tr. 364-65, 383, 392–93). There is sufficient evidence on the record to support the determination to only give partial weight for Dr. Gopalan's opinion based on his conservative and routine treatment of Ms. Harley.

Finally, the ALJ reasoned that Dr. Gopalan's opinion only received partial weight because the doctor's reports failed "to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Tr. 30). In his May, 2010 opinion, Dr. Gopalan cited Ms. Harley's MRI, C-spine, and nerve conduction electromyography as diagnostic tests performed, which informed his opinion. (Tr. 339). Dr. Gopalan's June, 2011 opinion cited Ms. Harley's cervical spinal fusion "with residual neuropathy," as medical findings that support his assessment on Ms. Harley's ability to lift/carry, and Ms. Harley's "abnormal MRI of the knee showing chondromalacia patellae" to support his assessment of Ms. Harley's ability to stand and walk. (Tr. 488–90). Dr. Gopalan did not provide any support for his finding that Ms. Harley could only sit for 8 hours with a break every hour. (Tr. 490). These tests were the basis for Dr. Gopalan's decision to refer Ms. Harley to various specialists, and as the ALJ considered the improvements to Ms. Harley's condition after treatment by the specialists, it was within the ALJ's discretion to determine Dr. Gopalan needed to base any opinion inconsistent with these specialists on further clinical or laboratory evidence.

While the ALJ did mention the speculative possibility that sympathy for a patient could explain inconsistency in a doctor's notes and treatment (Tr. 30), the ALJ's decision to assign "partial weight" to Dr. Gopalan's opinions was not based on those motives. Instead, as described above, the ALJ demonstrated substantial evidence on which to rest her assignment of weight.

Ms. Harley next contends that the hypothetical that the ALJ presented to the VE should not have included "frequent overhead reaching or push/ pulling" limitations. Pl.'s Mot. 9. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen,* 861 F.2d 536, 540–41 (9th Cir.1988). The ALJ provided two hypotheticals to the VE. The first hypothetical, which ultimately comported with the RFC assessment adopted by the ALJ, included a limitation that Ms. Harley can "do frequent, but not constant, push, pull, reach, including overhead reach; can do fingering, handling/fingering." (Tr. 61–62). Ms. Harley contends that the ALJ erred in basing her ultimate RFC assessment on this first hypothetical, and argues that the ALJ should have relied on the second hypothetical posed to the VE, which limited overheard reaching and push/pulling to only "occasional" in one extremity. Pl.'s Mot. 9. The VE testified that the limitation in the second hypothetical would rule out sedentary jobs. *Id.*

Ms. Harley believes the ALJ was incorrect in relying on the first hypothetical because there is no medical opinion supporting this hypothetical, and because a non-examining physician, Dr. Sadler, opined that Ms. Harley was "unable to perform frequent overhead reaching or push/pulling." Pl.'s Mot. 9. I find, however, that the ALJ relied on sufficient evidence to determine Ms. Harley is able to perform frequent overhead reaching or push/pulling. First, as discussed above, the ALJ demonstrated sufficient evidence to support a finding that Ms. Harley's ability to use her hand and elbows had improved based on her treatments. Additionally, the ALJ considered the improvements to Ms. Harley's range of motion in her upper extremities, her normal shoulder strength, and her lack of musculoskeletal abnormality, which would all impact her ability to reach overhead. (Tr. 24–27); *see e.g.*, (Tr. 638) (no musculoskeletal abnormality and full range of motion during June, 2010 ER visit); (Tr. 615) (August, 2010 full sensation in all extremities with normal range of motion and tone, no tenderness in her neck); (Tr. 421–22) (shoulder swelling resolved without medication, normal flexion and extension and rotation); (Tr. 444) (February, 2011 forearm and upper arm "unremarkable," elbow is "much better after injections. She said she has no troubles with it."); (Tr. 464) (March, 2011 doctor's note forearm and upper arm were "unremarkable"); (Tr. 478) (Dr. Schnee assessed Ms. Harley's cervical myelopathy as stable, with "no new evidence of cervical dysfunction."); (Tr. 589) (November, 2011 doctor noted normal range of motion, normal strength, no swelling and no deformities in Ms. Harley's musculoskeletal examination). The ALJ also considered Ms. Harley's ability to cook, clean, do laundry, and lift for her disabled husband, all activities that require an ability to push, pull, and reach. (Tr. 23, 251, 374).

I find the ALJ did not err in her consideration of Dr. Sadler's opinion when forming the RFC assessment for two reasons. First, the ALJ does not have to base her RFC assessment on only one medical opinion, but must make the RFC determination based on an examination of the

record in its entirety. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (The regulations require that an ALJ base the RFC assessment on "all of the relevant medical and other evidence" in the record). Second, Dr. Sadler based his opinion that Ms. Harley is limited to only occasional push/pulling in her upper extremities "due to left elbow pain and bilateral CTS [carpel tunnel syndrome]." (Tr. 96). As noted above, the record provides sufficient evidence of Ms. Harley's increased ability to use her hands and her left upper extremity after her carpel tunnel surgery and her cortisone injections. Despite Ms. Harley's contentions, the ALJ adequately considered the recommendations of the non-examining physician Dr. Sadler, among the additional medical and other evidence on the record. The hypothetical presented to the VE was supported by substantial evidence, and adequately included all the limitations that were deemed credible by the ALJ.

In her final argument, Ms. Harley contends that the ALJ erroneously made an adverse credibility finding. Pl.'s Mot. 10–11. The function of this Court is not to weigh conflicting evidence, determine credibility, or substitute its judgment for that of the Commissioner's. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Accordingly, the Commissioner's weighing of the evidence is entitled to deference. Furthermore, the Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." *Id.* at 595. The ALJ followed that process in this case. She determined that Ms. Harley's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 21). However, the ALJ did not find Ms. Harley's testimony concerning the intensity, persistence, and limiting effects of her symptoms to be fully credible. *Id.*

Ms. Harley contends that the ALJ erred in her credibility analysis in two regards: (1) in her consideration of evidence from before Ms. Harley's alleged onset date of disability, and (2) in her failure to considered Ms. Harley's intolerance for pain medication in her assessment of Ms. Harley's pain.

Among other factors weighing against Ms. Harley's credibility, the ALJ considered a statement Ms. Harley made to her neurologist, Dr. Michael Sellman, regarding her inability to work because she has to "care and lift for" her husband who is disabled. (Tr. 29). Ms. Harley contends that it was improper, when making her credibility assessment, for the ALJ to consider events that occurred before Ms. Harley's alleged onset date of May 27, 2010. Pl.'s Mot. 10. Consideration of Dr. Sellman's 2009 report was not improper, as the ALJ may consider "all evidence in [a] case record when [making] a determination or decision whether [a claimant is] disabled." 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 416.920(a)(3); *see also Woodhouse ex rel. Taylor v. Astrue*, 696 F. Supp. 2d 521, 535 (D. Md. 2010) (finding behavior evaluation that occurred before the alleged onset date, if relevant, must be considered by the ALJ); *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005) ("there is no valid reason to exclude consideration of medical records dated prior to [the claimant's] alleged date of onset"). Furthermore, the 2009 statement is consistent with an October, 2010 report that the ALJ considered, in which Ms.

Harley explained that her daily activities included caring for her disabled husband, preparing complete meals, cleaning the house, doing laundry, ironing, driving, and shopping for groceries. (Tr. 23).

The ALJ also determined that the record is inconsistent with a disabling level of impairment based on the type, dosage, and side effects of Ms. Harley's medication. (Tr. 24, 28). Ms. Harley contends that the ALJ erred in her "determination of pain," because she did not "synergistically" consider Ms. Harley's difficulty "tolerating all pain medication," with Ms. Harley's "at least 'moderate' gastritis." Pl.'s Mot. 10. Specifically, Ms. Harley contends that her intolerance to pain medication, and not relief from her pain, caused periods of time in which she did not take pain medication. Pl.'s Mot. 10. For the reasons discussed below, I find that the ALJ provided a sufficient basis to conclude Ms. Harley could tolerate some pain medication and that there were periods of time during which she did not use pain medication, which supported the ALJ's adverse credibility finding.

The ALJ found Ms. Harley was prescribed pain medication that was "relatively effective in controlling the claimant's symptoms," and cited to Ms. Harley's Pain Questionnaire, in which she reported that for her spasms, "Valium does help most of the time." (Tr. 28, 246). The ALJ also considered notes from an examination in November, 2011 in which the doctor recorded that Ms. Harley used analgesics to relieve her knee pain, and that Ms. Harley did not have symptoms when taking over the counter mediations to control her pain. (Tr. 28, 587). The ALJ explained that despite Ms. Harley's complaints of pain, there were periods of time when she was not using any pain medication. (Tr. 28).

The ALJ next considered the objective medical evidence as to whether Ms. Harley had an inability to tolerate pain medication. (Tr. 28). Ms. Harley testified that pain medication caused severe nausea and vomiting; however, as the ALJ noted, there are no contemporaneous treatment notes to support this claim. There are, in fact, treatment notes indicating times when Ms. Harley did not mention any medication side effects and denied nausea and vomiting. (Tr. 614, 654). During a June, 2010 Emergency Room visit for chest pains, the physician noted that Ms. Harley did not complain of nausea or vomiting, but had been "trying to take pain medicines and muscle relaxants." (Tr. 654). The doctor further noted Ms. Harley's medications included Cyclobenzaprine, a muscle relaxant, and diclofenac, a non-steroidal anti-inflammatory drug ("NSAID") pain reliever. *Id*. Furthermore, during her visit to the Emergency Room, the doctors noted "no reaction" to Percocet, morphine or potassium perchlorate. (Tr. 588, 614). In November, 2011, Ms. Harley started taking over the counter analgesics to relieve her knee pain, and did not mention side effects. (Tr. 587). The ALJ also considered the fact that there is no objective evidence that Ms. Harley had a problem with pain medication after her fibroid surgery in March, 2012. (Tr. 28). In the Progress Note from Dr. Cesaire, after Ms. Harley's fibroid surgery, she reported taking "800 mg of Motrin regularly [without] side effect." (Tr. 671). Additionally, following her left knee arthroscopy, on a December 23, 2011 appointment the doctor's notes read "patient denies pain in knee—Motrin x [two times per day], discontinued knee immobilizer 3 days ago." (Tr. 537). This evidence is consistent with the fact that as of February, 2011, Dr. Gopalan still prescribed Ms. Harley etodolac, an NSAID pain reliever (Tr.

280), and Ms. Harley testified at her hearing that she took Motrin, an NSAID, for her pain. (Tr. 45). The ALJ's rejection of Ms. Harley's subjective complaints of intolerance to pain medication is sufficiently supported by objective medical evidence in the record which rebut any such intolerance. In light of the substantial evidence cited by the ALJ to support the adverse credibility assessment, remand is unwarranted.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 17) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 19) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                        Sincerely yours,

                                        /s/

                                        Stephanie A. Gallagher
                                        United States Magistrate Judge